IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| TIMOTHY WELCH,<br>                 **Plaintiff,**<br><br>v.<br><br>JAMIE FETTIG INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS FOUNDER & PRESIDENT OF VELOCE PLANES<br>                 **Defendants.** | **COMPLAINT (Jury Trial Demanded)** |

Plaintiff, Timothy Welch, by and through his attorney, Dana McClain, files this Complaint against Defendant Jamie Fettig, alleges the following:

**JURISDICTION AND VENUE**

1. This action is brought under 28 U.S. Code §1332-Diversity of citizenship; amount in controversy; This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

2. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

1

3. Defendant is subject to this Court's specific jurisdiction because the causes of action herein arise directly from Defendant's purposeful contacts relating to Plaintiff in North Carolina.

4. Defendant is subject to the Court's general personal jurisdiction because it is constructively "at home" because of continuous and systematic contacts in this State with respect to Plaintiff. Defendant Resides and offices in Whiteville North Carolina. Defendant contracts, orders, manufactures, receives products in Whiteville, North Carolina. Defendant also Incorporated Jethrow Engines LLC on the 2nd day of February 2024 in North Carolina.

5. Defendant resides in North Carolina and notified Plaintiff's counsel that he is the agent for service of process for Veloce Planes.

## THE PARTIES

6. The plaintiff is the purchaser of the Veloce 400 aircraft involved in this case and resides in Tucson, Arizona.

7. Defendant is the Founder and President of Veloce Planes LLC, is upon information and belief, a North Dakota limited liability company with its principal place of business at 50 Hill Plaza, Whiteville, NC 28472.

## FACTS COMMON TO ALL CLAIMS

8. Upon reviewing information regarding Veloce Planes and the Defendant on several aviation sales platforms, Plaintiff reached out to Defendant in August 2023 to inquire about the purchase and construction of a Veloce 400 aircraft.

9. Defendant falsely informed Plaintiff that Veloce 400 aircraft were available for viewing in Nevada, Georgia and Florida. Several months after signing the contract, Plaintiff discovered that on June 17, 2023, the Defendant had been involved in an incident resulting in the crash of the only Veloce 400 actively flying in the United States. Defendant did not inform Plaintiff that the only Veloce 400 flying in the United States had been crashed. Instead, Defendant misled Plaintiff to believe that there were at least two Veloce 400 planes for him to view one in Nevada and one in Georgia.
10. Before the Plaintiff executed the contract, the Defendant was aware that he had not previously completed a Veloce 400 airplane build but represented to the Plaintiff otherwise. The Defendant also led the Plaintiff to believe that all monies paid would be applied in accordance with the terms of the contract. However, the Defendant knew that the funds would be used to construct his Veloce 600 airplane. Had the Plaintiff been made aware of the Defendant's lack of experience, knowledge, or expertise in completing an airplane build, or that the funds would be allocated toward constructing the Veloce 600 rather than the Plaintiff's aircraft, the Plaintiff would not have entered into the contract.
11. Before executing the Contract, Defendant offered the Plaintiff the use of a loaner plane during the assembly of his own aircraft. At the time of this discussion, the Plaintiff was unaware that the loaner plane referenced by the Defendant had been involved in a crash on June 17, 2023, rendering it unavailable for the Plaintiff's use while the Defendant was constructing his plane.
12. On September 28, 2023, Plaintiff signed a contract with Veloce Planes, while at his home in Tucson, Arizona.
13. On September 28, 2023, Plaintiff wired Defendant $100,000.

14. Defendant signed the contract with Plaintiff on October 12, 2023,

15. The Contract specifies the purchase price of $290,000 with the following payment schematic:

- "$50,000 when kit is ready to ship (2-4 weeks)
- $50,000 for halfway built composite parts of kit (around Dec. 2023)
- $40,000 to order engine (includes 315 HP TIO-550 factory rebuilt engine) (around Dec. 2023)
- $45,000 to order and install the avionics (G3x dual screen with 507 auto pilot and GTN 750 and dual comms) (around Dec 2023)
- $15,000 to install the interior and finish (you pick colors, we supply leather quality interior) (Due Dec. 2024)
- $25,000 for paint (you give us picture of color scheme and color codes you want) (around Sept. 2024)
- $15,000 upon delivery of completed aircraft.

Full function aircraft with all described functioning new equipment and parts details listed above
Failure to pay any installment will result in a fine of 2% in addition to interest of 1% per month, as well as the early maturity of other installments and delay of delivery dates".

16. Defendant informed Plaintiff that a factory shipping error sent Plaintiff's airplane kit to North Carolina rather than California.

17. Instead of obligating the Defendant to bear the expense of transporting his aircraft to California, the Plaintiff chose to have the plane constructed in North Carolina by the Defendant, who is the owner of Veloce Planes. Plaintiff believed this was an even better option as Defendant would be the builder of Plaintiffs airplane.

4

18. By December of 2023 Plaintiff had paid Defendant approximately $250,000 well in advance of the contractual requirements.

19. On December 12, 2023, the Plaintiff received an email from the Defendant inquiring whether he wished to purchase a Veloce 200 as an alternative to the originally ordered aircraft. The Defendant indicated that the Veloce 200 could be constructed three to five months earlier than the initially purchased plane. Subsequently, on or about February 9, 2025, Plaintiff was made aware that there never was a Veloce 200 for him to purchase, as the only Veloce 200 in the world is in a hanger in Brazil and they have not ever manufactured that airplane nor sold it.

20. The Plaintiff fulfilled his financial obligations under the contract; however, the Defendant informed the Plaintiff that the prices of the engine, avionics, and related components had increased since the contract was signed and requested an additional payment of approximately $40,000. On December 26, 2023, the Defendant provided wire instructions, and the Plaintiff subsequently transferred the requested funds.

21. On July 23, 2024, Defendant emailed Plaintiff indicating that upholstery work on Plaintiff's aircraft was required soon, that final priming was approaching necessitating the ordering of paint, and requesting an additional $20,000, even though Plaintiff had already provided money for paint per the contract. Plaintiff promptly remitted the requested funds by wire transfer to Defendant.

22. On July 31, 2024, Defendant informed Plaintiff by email that the price of the TIO-550 engine, as specified in the contract dated September 28, 2023, had increased and requested additional payment. Plaintiff complied with this request and remitted the

5

additional funds, even though payment for the TIO-550 engine had already been made in December 2023.

23. Following two emails sent eight days apart requesting additional funds for items that should have already been procured and available, the Plaintiff began making direct inquiries about the status of the airplane build, including questions related to the timeline and the overall percentage of completion at that point in time.

24. On October 28, 2024, the Plaintiff contacted the Defendant to inquire about the Defendant's contractual obligations and the completion timeline for his aircraft. The Defendant acknowledged that he would not meet the contractual deadline of December 2024, indicating a delay of two to three months, and offered to reimburse the Plaintiff for plane rental expenses, as the Plaintiff required access to an aircraft.

25. On October 28, 2024, Plaintiff sent a very direct text message to Defendant asking:

> I see the probability of more issues. I am in line behind other projects. How will you get assembly done, painting, 40 hours of test flights completed and then meet FAA requirements with several airplanes ahead of me? All of my Garmin components are getting more expensive, and delivery is slow. I originally had kit #4. I am now kit #7 and none of the aircraft ahead of me are in the hands of customers.
>
> I paid a lot up front hoping to lock in prices and have a fast build. I'm getting neither. In addition, getting to NC is costly and time consuming. If we go with refund when can I expect the check?
> If we go with a price reduction it should be similar to what late payments are quoted at.

26. Plaintiff made plans to fly to Whiteville, North Carolina November 18-21, 2024.

27. On November 12, 2024, Plaintiff contacted James Johnson at Aircraft Builder Assist Center (ABAC), the original center in California designated to construct Plaintiff's plane before it was transferred to North Carolina. Plaintiff learned of at least two other customers who had previously experienced similar challenges obtaining airplane construction services from Defendant. In addition, Plaintiff became aware that these

6

customers had also made substantial payments to Defendant. At that time, and as of the present date, Defendant has not completed any airplane builds.

28. On November 18, 2024, the Plaintiff engaged in a discussion with the Defendant and advised relocating his aircraft to ABAC in California, citing concerns that the Defendant was deferring deliveries at that time.

29. On November 18, 2024, Plaintiff visited Defendant and his facility in Whiteville, North Carolina. During the visit, Plaintiff observed two carbon fiber kits in the early stages of priming and sanding, which are among the initial steps in constructing the airplane. Plaintiff also noted a kit that had been painted and had completed interior leather work prior to shipment from Brazil. No evidence showed that contractual milestones on Plaintiff's airplane were completed at the facility or that Defendant could complete the build.

30. During conversations regarding the transportation of his aircraft to ABAC in California, the Defendant indicated that he was unable to cover the full shipping expenses but offered to share the cost with the Plaintiff should the Plaintiff choose to move the plane by truck. The Plaintiff consented to this arrangement.

31. On November 22, 2024, nearly a year after Plaintiff fulfilled his contractual obligations with Defendant, Defendant sent a message indicating that he did not have the financial resources to obtain Plaintiff's engine when it was ready for shipment. It is alleged that Defendant received Plaintiff's funds and agreed to the corresponding contractual deliverables, but subsequently used those funds for another project, specifically work on the Veloce 600 aircraft, without Plaintiff's knowledge or consent. This conduct effectively resulted in Plaintiff's funds being used as an interest free loan to finance an

unrelated endeavor, raising concerns regarding misappropriation of funds and potential breach of contract.

32. Between November 22, 2024, and November 26, 2024, the Plaintiff and Defendant exchanged multiple text messages in which the Defendant indicated that the Veloce 600 was his primary concern and agreed to cover any cost overruns incurred by the Plaintiff for constructing the aircraft in California. The Defendant attributed delays to circumstances in Brazil, noted that sales of the Veloce 400 were resulting in financial losses, and mentioned plans for an upcoming vacation. During one of the text exchanges the Defendant stated:

> "I have to prioritize getting the 600 up. That is my only way out of this mess. I have
> 19 contracts who will all owe me money when it does then I can pay everyone back and
> Finish all builds and make it right."

33. On December 16, 2024, the Plaintiff and Mr. Johnson (ABAC) arrived in Whiteville, North Carolina, to prepare the Plaintiff's aircraft for transportation to Auburn, California. The Plaintiff received one Veloce 400 kit along with a portion of the avionics. Subsequently, the Plaintiff and Mr. Johnson transported the aircraft by road from Whiteville, NC to Auburn, CA. The journey spanned four days and incurred an approximate cost of $4,000 to the Plaintiff.

34. The Defendant asserts that $160,000–$170,000 worth of work was completed on the Plaintiff's aircraft prior to its transfer to ABAC. However, the Defendant has not been able to provide any invoices or time sheets substantiating the hours worked or the value

8

Case 7:25-cv-01398-BO-KS    Document 1    Filed 08/07/25    Page 8 of 17

of the services rendered. Additionally, the quality of the work performed was substandard and required significant repairs, necessitating further investment by the Plaintiff to complete the aircraft. It should also be noted that, prior to the relocation of the aircraft to ABAC, the Defendant sent Plaintiff a text that, "Anything you pay James over your contract amount I will pay for when the 600 flys [sic]."

35. The plaintiff's plane has been located at ABAC since December 2024. ABAC began work on the aircraft in January 2025, and it is anticipated that the plane will be operational by September 2025.

36. On February 8, 2025, Defendant sent Plaintiff the following email solidifying his position that the Veloce 600 was his priority and all monies were diverted to this project without the Plaintiffs knowledge:

> "Hi Tim
>
> So I can see the finish line. (see attached)
>
> 2 months and $75k is all I need.
>
> I should be able to pay you in full by april 10th at the latest.
>
> Attached is the outline of what I have left, the amount I need and time I need.
>
> I will have my two planes at sun and fun, flying or not. the ANG and 600. With my engines, which flew on tuesday.
>
> So I am sure by the end of it, I will have cash to pay you and everyone else back. . 
>
> Thanks for your patience. I will add some nice interest in because you shouldn't have had to wait. Sorry again. and thanks
>
> Jamie"

37. Between February 9 and 12, 2025, the Plaintiff traveled to Brazil on a fact-finding mission to visit the factory that produces the Veloce 400 kits. During this visit, the Plaintiff learned that delays in the process were attributed to requested changes to the kits and outstanding payments. The Defendant indicated that the manufacturer was responsible for the delays in receiving the kits, while information obtained by the Plaintiff suggested that the delays resulted from unpaid orders. At this time, the Defendant had held $290,000 from the Plaintiff for over a year, and those funds were used for work on another airplane (Veloce 600) rather than being allocated toward securing the Plaintiff's deliverables under the contract signed on October 28, 2023.

38. On April 10, 2025, Plaintiff sent Defendant a demand letter for breach of contract and payment owed.

39. Defendant acknowledged receipt of the demand letter on April 16, 2025.

40. On April 22, 2025, Defendant sent the following email.

> "As i told your client, i will happily pay him when i have the money.
> My plan is for those who are patient, to actually voluntarily pay them interest as well.
> my plan for those who are impatient, is to pay them last with minimal amount i can.
> right now, your client is the only person who isn't being patient.
>
> I owe multiple people money right now, including him.
>
> I am doing the best I can to make money, get caught up, and pay everyone back, so i don't have to file bankruptcy.
> but if clients want to push, and sue me, i will likely file bankruptcy. won't have another choice."

41. On June 2, 2025, the Defendant sent an email indicating an intention to make a payment within 30 days. The Defendant further stated that all Veloce 400 customers would receive 10% of their principal amount plus 1% interest per month for the duration of the outstanding debt. Specifically, the Defendant indicated that the Plaintiff would receive a payment of $28,800 in June, followed by an additional payment of 20% of the principal

10

plus interest in August 2025. The communication also confirmed that the Defendant acknowledges owing the Plaintiff approximately $280,000, as well as any excess costs incurred by the Plaintiff during the construction of his airplane at ABAC.

42. On July 1, 2025, when the Defendant was scheduled to send Plaintiff a payment of $28,800, the Defendant instead sent an email stating that two additional weeks were needed before the payment could be made. This was the last communication between Plaintiff and Defendant, and as of today, Plaintiff has not received the payment.

43. From the outset, Defendant has not been forthcoming with Plaintiff. Prior to entering into the contract, Defendant was aware that he would not be constructing the Veloce 400 airplane as specified. Defendant failed to meet any contractual deadlines and did not deliver the agreed-upon products; instead, Plaintiff received only a Veloce 400 kit, which itself was not what was originally ordered but was accepted by Plaintiff to facilitate the commencement of construction. Since the execution of the contract and receipt of payment, Defendant repeatedly assured Plaintiff of progress and adherence to deadlines, which proved inaccurate. Defendant requested additional funds for an engine that was never provided, and Plaintiff did not receive it. In July 2024, Defendant informed Plaintiff that $20,000 was needed for upholstery and that preparations for painting were imminent; these statements were also unsubstantiated. Upon visiting Defendant's facility in November 2024, Plaintiff discovered that work on the aircraft remained at an early stage, there was no engine present, and neither upholstery nor painting was near completion as previously represented. Furthermore, there was no indication that Defendant intended to complete the aircraft if Plaintiff left the kit at his facility.

44. The defendant operates a Ponzi-like scheme by using funds intended for airplane construction to support the Veloce 600 project, making the plaintiff one of several victims. Defendant's correspondence indicates he is repeating this scheme with new Veloce 600 contracts, promising to repay earlier victims with these funds. Despite entering into these contracts, the defendant cannot build the airplane as the necessary molds remain unpaid for in a Brazilian factory. To date, the defendant has not completed any airplane builds.

45. The Defendant has not demonstrated expertise or adherence to regulations, policies, procedures, and guidance related to building experimental airplanes. There is concern that a lack of compliance with basic guidance could present safety risks for the aircraft. According to available information, the Defendant did not meet industry standards, failed to fulfill certain documented time commitments, reported purchasing critical equipment for the build which could not be verified, and did not validate the process and safety of components installed on the aircraft. It is expected by the Plaintiff that using a build center for constructing an aircraft would result in compliance with industry standards throughout the building process.

46. The Plaintiff was recently introduced via telephone to Adrian Herrero, who piloted the Defendant's demonstration aircraft. Mr. Herrero expressed concern, stating that it was the only aircraft he had flown which he found concerning due to the manner in which it was managed and maintained by the Defendant.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Breach of Contract against the Seller)

47. Plaintiff incorporates by reference all other allegations as set forth fully herein.

48. The Agreement is an enforceable contract, through which the Defendant offered to purchase certain deliverables and complete the build of a Veloce 400 airplane for Plaintiff. Plaintiff accepted Defendants offer and terms to build him a Veloce 400 airplane and provided consideration in the amount of $290,000.00.

49. Plaintiff fully performed his obligations to Defendant under the terms of the Agreement.

50. The Defendant did not fulfill the obligations outlined in the Agreement, which is considered a breach of contract. Specifically, aside from the purchase of a Veloce 400 kit, the Defendant did not meet the other requirements set forth in the agreement. Defendant failed to provide an engine, avionics, interior and finish, paint and did not complete the aircraft. Because of Defendant's breach, Plaintiff is out additional money and time to obtain the parts necessary and finish his airplane build.

51. Plaintiff has suffered damages exceeding $75,000 as a direct and proximate result of Defendant's breach of the Agreement.

## SECOND CAUSE OF ACTION
### (FRAUD IN THE INDUCEMENT AGAINST THE SELLER)

52. Plaintiff incorporates by reference all other allegations as set forth fully herein.

53. As previously stated, Defendant made false representations to induce Plaintiff into entering the Contract, specifically asserting that Plaintiff's funds would be used to secure deliverables and construct Plaintiff's aircraft. At the time of contract execution, Plaintiff

was unaware that Defendant had held multiple contracts for aircraft construction over several years without completing any such builds. It is further alleged that Defendant, prior to the signing of the contract, knew he intended to allocate Plaintiff's funds toward completing his own Veloce 600 project and did not disclose this information to Plaintiff. Plaintiff asserts that, had he been informed of these facts, he would not have entered into the contract. Additionally, every time Defendant asked for additional money (for the engine, interior, paint, etc.) and changed the terms of the contract, he provided false information in order to induce Plaintiff into providing additional monies.

54. At the time the Defendant made these representations to the Plaintiff, the Defendant was aware of their falsity and made such statements with the intent to defraud the Plaintiff and induce him to enter into the Contract and transfer a total of $290,000 to the Defendant.

55. The Plaintiff reasonably relied on representations made by the Defendant in agreeing to enter into the contract and transferred a total of $290,000 to the Defendant well in advance of the latter's contractual obligations. However, the Defendant misused these funds and failed to order the necessary airplane components required to complete the build, despite repeatedly assuring the Plaintiff that the project was progressing as scheduled. Subsequently, the Defendant took further steps to deceive the Plaintiff, requesting additional funds for the Veloce 600 project by claiming an increase in engine costs, even though he had not ordered the engine as stipulated in the contract. The Defendant later represented that he was ready to install the leather interior and prime the airplane and again requested additional funds. The Plaintiff provided the funds as requested; however, upon visiting the Defendant's build site in November 2024, the Plaintiff discovered that the Defendant's prior statements were false, the airplane

remained in the early stages of construction, and although the engine had finally been ordered—with funds provided by the Plaintiff—the Defendant claimed he was broke and unable to pay for the shipment of the engine from the factory.

56. If Plaintiff had been aware that Defendant's representations were false and fraudulent, Plaintiff would not have entered into the Contract or transferred over $290,000 to Defendant.

57. Due to the Defendant's deliberate false and fraudulent misrepresentation, and the Plaintiff's reliance on these statements, the Plaintiff has incurred damages.

58. As a result of the foregoing, Plaintiff has sustained damages in an amount to be determined at trial, but not less than $500,000, plus interest, which Defendant has acknowledged as owing to Plaintiff.

## THIRD CAUSE OF ACTION
## (FRAUDULENT MISREPRESENTATION AGAINST THE SELLER)

59. Plaintiff incorporates by reference all other allegations as set forth fully herein.

60. The defendant made false representations regarding material facts, including those relating to the use of the plaintiff's funds, completion status of the contracted aircraft, procurement of contract deliverables, and actual progress or work performed on the aircraft. It is further asserted that the defendant knowingly diverted the plaintiff's funds to another project without Plaintiff's knowledge or consent, failed to order required deliverables under the contract, and did not complete work on the plaintiff's aircraft. Despite these actions, the defendant continued to inform the plaintiff that contractual obligations were being met and represented that the plaintiff's aircraft was nearly ready

15

for interior fitting and painting, when in fact a motor for the aircraft had not even been secured. Additionally, the Defendant never intended to complete Plaintiff's aircraft and instead used the Plaintiff's funds for the construction of his own Veloce 600 aircraft. As of the date of this filing, the plaintiff has not received a completed aircraft, and the defendant has not delivered any complete airplanes, although several orders have been placed, including the Plaintiff's.

61. These representations were made to induce Plaintiff to enter a contract and then to pay additional monies above the contracted price, which Plaintiff did, resulting in damages exceeding $75,000.

## FOURTH CAUSE OF ACTION

### (UNJUST ENRICHMENT AGAINST THE SELLER)

62. Plaintiff incorporates by reference all other allegations as set forth fully herein.
63. Due to the aforementioned actions—including the alleged fraudulent inducement of Plaintiff to enter into the Contract, deliberate breach of said Contract, and failure to fulfil both legal and contractual obligations, the Defendant has been unjustly enriched at Plaintiff's expense and to Plaintiff's detriment.
64. In equity and good conscience, the Defendant should not be entitled to retain the monies tendered by Plaintiff, nor should he be permitted to continue diverting such funds and treating Plaintiff's money as an unsecured, interest-free loan for personal purposes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor against Defendant as follows:

16

1. Finding the Defendant breached the contract with Plaintiff.

2. Finding the Defendant fraudulently induced Plaintiff into signing the contract.

3. Finding the Defendant fraudulently misrepresented material facts.

4. Finding the Defendant was unjustly enriched.

5. Granting compensatory damages to be shown by proof plus statutory interest from the date of the breach.

6. Granting punitive damages.

7. Attorney fees and costs to the extent allowed by law.

8. All other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Dana McClain

Dana McClain, Esq.
ABN 2001-028
Pending Pro Hac Vice
Attorney for Plaintiff Timothy Welch
6 Biscayne Ct.
Little Rock, AR 72227
501-425-1741
Dana.mcclain@att.net

/s/ Morris F. McAdoo
Morris F. McAdoo
McAdoo Law Group, PLLC
112 S. Tryon St, Ste 570
Charlotte, NC 28284
888-235-5550
morris@mcadoolawgroup.com